Gary FRIEND, Appellant,

v.

CELLCO PARTNERSHIP d/b/a
Verizon Wireless,
Respondent.

WD 80369

Missouri Court of Appeals,
Western District.

OPINION FILED: August 8, 2017

John A. Miller, Kearney, MO, for appellant.

Michael J. Tolles, St. Louis, MO, for respondent.

Before Division One: James E. Welsh, Presiding Judge, Lisa White Hardwick, Judge and Gary D. Witt, Judge

Gary D. Witt, Judge

Plaintiff/Appellant Gary Friend ("Friend") appeals the Judgment and Order of the Circuit Court of Clay County granting summary judgment in favor of Defendant/Respondent Cellco Partnership d/b/a Verizon Wireless ("Verizon"). Friend brought suit against Verizon for what he alleged was an improper addition onto his bill and attempted collection of certain taxes that Friend claimed he did not owe. The trial court found that there were no disputed issues of material fact and that Verizon was entitled to judgment as a matter of law on two independent bases. First, the trial court found that Verizon was shielded by the safe harbor provisions of the Mobile Telecommunication Sourcing Act ("MTSA"). Second, the trial court found that Friend failed to comply with a Missouri statute, section 144.190,[1] which sets forth special rules by which a telecommunications customer may contest a tax or charge the customer believes to have been assessed in error. Friend raises three claims of error on appeal. We affirm.

## Factual Background

On May 12, 2012, Friend purchased Home Phone Connect Wireless Service ("HPC Wireless Service") from a retailer of Verizon wireless products and services in Excelsior Springs, Missouri. HPC Wireless Service consists of a portable telephone with an external antenna that receives improved service in certain areas, including rural locations. HPC Wireless Service operates on Verizon's cellular network.

At the time Friend purchased his HPC Wireless Service, he provided his post office box address in Lawson, Missouri ("Lawson"), with a 64062 zip code. Lawson assesses a local sales tax ("Sales Tax") on companies doing business in Lawson in addition to a license fee on companies doing business in Lawson ("Business License Tax"). Verizon collects these taxes from its customers who conduct business in Lawson by adding the Sales Tax and Business License Tax (collectively, the "Lawson Taxes") onto its customers' monthly bill.

In the underlying action, Friend claimed that he is not and has never been a resident of Lawson and has never maintained a business office in Lawson and is, therefore, not subject to the Lawson Taxes. In an affidavit submitted to the trial court in opposition to summary judgment,[2] Friend claimed that he telephoned Verizon multiple times and notified Verizon's customer service department that he was not subject to the Lawson Taxes. Friend apparently received a credit for the Lawson Taxes four times and he was told he would no longer be invoiced for the Lawson Taxes. Apparently, Verizon continued to charge

---

1. All statutory citations are to RSMo. 2000 as updated through the December 31, 2016 cumulative supplement, unless otherwise indicated.

2. See Point Three for a discussion of this affidavit and the trial court's consideration thereof.

Friend for the Lawson Taxes, and Friend decided unilaterally to deduct and refuse to pay the portion of his bill attributable to the Lawson Taxes. This resulted in the underpayment of the bills submitted to Friend by Verizon and, eventually, Verizon discontinued Friend's HPC Wireless Service.

Friend filed suit against Verizon and the store at which he purchased his HPC Wireless Service, CoCoBro Enterprises, LLC,[3] alleging that they erroneously billed him for the Lawson Taxes.[4] In his First Amended Petition, Friend alleged that he was erroneously assessed and billed for the Lawson Taxes and that this constituted a violation of the Missouri Merchandising Practices Act ("MMPA"), section 407 *et seq.*

Verizon moved for summary judgment. Following briefing and oral argument, the trial court granted Verizon summary judgment. The trial court found that Verizon was entitled to summary judgment as it had set forth sufficient and undisputed facts that it had complied with the MTSA's safe harbor provision, 4 U.S.C §§ 116–126. The trial court also found that Verizon set forth sufficient facts demonstrating that Friend failed to comply with the requirements of section 144.190.7(2), a Missouri statute setting forth special rules through which a mobile telecommunication customer may contest a tax or other charge the customer believes was assessed in error. Friend now appeals.

## Standard of Review

When considering an appeal from a summary judgment, we review the rec-

ord in the light most favorable to the party against whom judgment was entered, and we afford that party the benefit of all reasonable inferences. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Because the circuit court's judgment is based on the record submitted and the law, we need not defer to the circuit court's order granting summary judgment. *Id.* Rather, because "[t]he propriety of summary judgment is purely an issue of law," we review the grant of a summary judgment de novo. *Id.* "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* Thus, we will affirm the grant of a summary judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 377, 380.

*Reverse Mortgage Solutions, Inc. v. Estate of Hunter*, 479 S.W.3d 662, 665-666 (Mo. App. W.D. 2015).

## Analysis

### Point Three on Appeal

■ Before addressing the substantive legal claims asserted by Friend in Points One and Two on appeal, the Court will first address Point Three, which pertains to whether the trial court considered Friend's late responses to Verizon's statement of uncontroverted material facts in support of its motion for summary judg-

---

3. CoCoBro Enterprises, LLC is not party to this appeal.

4. Friend initially filed his suit in Small Claims Court, which entered judgment in favor of Verizon and CoCoBro Enterprises, LLC. Friend then filed an application for a trial *de novo* of the small claims action with the Circuit Court of Clay County. The current appeal is from the Circuit Court of Clay County's grant of summary judgment in favor of Verizon in the *de novo* action.

ment. Friend claims that the trial court erred in granting summary judgment in favor of Verizon in finding that he did not comply with Rule 74.04(c)(2) by not responding to Verizon's motion for summary judgment in the appropriate format and, therefore, by failing to consider those responses in opposition to the request for summary judgment.

Verizon filed its motion for summary judgment and its statement of uncontroverted material facts on May 20, 2016. Friend filed an opposition memorandum to Verizon's summary judgment motion on June 17, 2016, but Friend did not file a response to Verizon's statement of uncontroverted material facts. Apparently, after Verizon filed its reply memorandum on July 12, Friend's counsel realized that he had not properly responded to the statement of uncontroverted material facts. Counsel for Friend admitted that the failure to timely respond was due to his inexperience with Missouri's online case management system and his oversight of Verizon's filing of it statement of uncontroverted material facts. On July 15, Friend sought leave to respond out of time to Verizon's statement of uncontroverted material facts and attached to that motion an exhibit of his proposed response.

The trial court addressed Friend's untimely response to Verizon's statement of uncontroverted material facts in its Judgment and Order granting Verizon summary judgment. The trial court first noted that Friend's "late filing is defective and does not comply with summary judgment requirements." The trial court continued on, however, to state that "[n]otwithstanding the late filing [ . . . ] [Friend's] responses consist mainly of a series of general denials and thus present no issues of material fact sufficient to overcome summary judgment." Although the trial court never explicitly granted Friend's motion to file out of time, it appears to this Court that the trial court accepted and considered Friend's late filing in ruling on Verizon's motion. Accordingly, the Court finds that the trial court did not err in granting summary judgment in Verizon's favor as a result of the trial court's refusal to consider Friend's untimely responses to Verizon's statement of uncontroverted material facts as it did consider those responses but found them to be insufficient.

Point Three is denied.

### Point Two on Appeal

■ As Point Two on Appeal is dispositive, the Court will first consider whether the trial court erred in granting summary judgment in Verizon's favor on the basis that Friend failed to comply with the required procedures of section 144.190.7, which sets forth special rules by which a telecommunications customer may contest a tax or charge the customer believes to have been assessed in error.

■ Section 144.190 provides the procedure by which taxpayers may seek a refund of overpayments of a tax from the director of revenue. Our courts have held that this section constitutes a limited waiver of the state's sovereign immunity and is the "exclusive method for the recovery of sales taxes." *H.S. Const. Co. v. Lohman*, 950 S.W.2d 331, 332-33 (Mo. App. W.D. 1997). Subsection (7) of section 144.190 provides "[s]pecial rules applicable to error corrections requested by customers of mobile telecommunications service" and explicitly incorporates the definitional terms of the MTSA. Section 144.190.7(2) states as follows:

Notwithstanding the provisions of this section, if a customer of mobile telecommunications services believes that the amount of tax, the assignment of place of primary use or the taxing jurisdiction

included on a billing is erroneous, the customer shall notify the home service provider, in writing, within three years from the date of the billing statement. The customer shall include in such written notification the street address for the customer's place of primary use, the account name and number for which the customer seeks a correction of the tax assignment, a description of the error asserted by the customer and any other information the home service provider reasonably requires to process the request.

After a customer has notified his or her home service provider as detailed above, subsection (3) provides the procedure the provider must follow in responding to the customer's complaint. That section provides as follows:

Within sixty days of receiving the customer's notice, the home service provider shall review its records and the electronic database or enhanced zip code to determine the customer's correct taxing jurisdiction. If the home service provider determines that the review shows that the amount of tax, assignment of place of primary use or taxing jurisdiction is in error, the home service provider shall correct the error and, at its election, either refund or credit the amount of tax erroneously collected to the customer for a period of up to three years from the last day of the home service provider's sixty-day review period. If the home service provider determines that the review shows that the amount of tax, the assignment of place of primary use or the taxing jurisdiction is correct, the home service provider shall provide a written explanation of its determination to the customer.

Friend does not contest that Verizon is a "home service provider" of a "mobile telecommunication service" as those terms are defined by the MTSA and adopted by Missouri. Friend concedes that he has failed to comply with section 144.190(7) in that he never communicated in writing with Verizon his claim that his taxing jurisdiction was incorrect. Friend argues, however, that section 144.190(7) should not bar his claim against Verizon, as Verizon had "actual notice" that he objected to Verizon's invoicing for the Lawson Taxes.

Statutory construction is a matter of law, and the primary purpose thereof is "to ascertain the legislature's intent from the language used to give effect to that intent if possible." *Beard v. Mo. State Emps.' Retirement Sys.*, 379 S.W.3d 167, 169 (Mo. banc 2012). Section 144.190.7(2) provides that the customer "shall" notify the telecommunications provider "in writing".

Generally, the word "shall" connotes a mandatory duty. *State ex rel. City of Blue Springs v. Rice*, 853 S.W.2d 918, 920 (Mo. banc 1993). However, Missouri courts have held that "where a statute or rule does not state what results will follow in the event of a failure to comply with its terms, the rule or statute is directory and not mandatory." *State v. Tisius*, 92 S.W.3d 751, 770 (Mo. banc 2002); *Rundquist v. Director of Revenue*, 62 S.W.3d 643, 646 (Mo. App. 2001); *Kersting v. Director of Revenue*, 792 S.W.2d 651, 652–53 (Mo. App. 1990).

*Bauer v. Traditional Sch. District of City of St. Louis*, 111 S.W.3d 405, 408 (Mo. banc 2003). It is not so simple however, as the Court has also explained that the presence or absence of a penalty provision is not conclusive as it is

"but one method" for determining whether a statute is directory or mandatory. *Southwestern Bell Tel. Co. v. Mahn*, 766 S.W.2d 443, 446 (Mo. banc 1989). Indeed, "[t]he absence of a penalty provision does not automatically over-

'ride other considerations." *Id.* Whether the statutory word "shall" is mandatory or directory is primarily a function of context and legislative intent. *Farmers & Merchants Bank and Trust Co. v. Director of Revenue*, 896 S.W.2d 30, 32 (Mo. banc 1995).

*Id.*

Although "shall" is repeatedly used in the special rules contained in section 144.190(7), the statute does not explicitly set forth what consequence follows if a customer fails to notify the service in writing regarding a disputed tax. However, we find that based on the context and legislative intent it is clear that these provisions are intended to be mandatory.

Telecommunications providers serve as intermediaries between the state or its political subdivisions and the customers, and the telecommunications provider is charged with the responsibility of determining and assessing what state and local taxes are applicable to each customer. Section 144.190 provides the exclusive mechanisms by which citizens may contest what they believe to have been improperly calculated and collected tax assessments. *See H.S. Const. Co.*, 950 S.W.2d at 333. Nestled within this statute, section 144.190.7 provides the "special rules" by which taxpayers may dispute what they believe to be an improperly calculated or assessed tax by a home service provider. The language of the statute is clear, contrary to Friend's argument on appeal, that this mechanism is for any customer who *believes he has been assessed an improper tax* and not only if the tax has been paid and the customer is seeking a refund. *See* section 144.190.7(2) (if a customer of mobile telecommunications services *believes* [...] the taxing jurisdiction included on a billing is erroneous, the customer *shall notify* the home service provider, in writing [....]) If the home service provider

determines that the taxpayer's contestation of a tax was correct or incorrect, the culmination of these "special rules" is a written explanation to the taxpayer regarding that determination. *See* section 144.190.7(3). Presumably, if the taxpayer still contests the result, he may then turn to the other remedies provided in section 144.190. If the home service provider determines the taxing jurisdiction was incorrectly collected, it "shall correct the error and, at its election, either refund or credit the amount of tax erroneously collected to the customer for a period of up to three years from the last day of the home service provider's sixty-day review period." A similar three-year limitation period is established by section 144.190.2, which provides that any claim for a refund due to an erroneously or illegally collected tax by the director of revenue may only be allowed if the claim is submitted in writing and within three years from the date of the overpayment. *See* sections 144.190.2 and 144.190.3.

█ As this court has previously noted, the law discourages the collection of erroneously collected taxes and the state "may prescribe the procedure to be followed and such other terms and conditions as it sees fit." *H.S. Const. Co.*, 950 S.W.2d at 333. We find that within the context of section 144.190, the special rules for section 144.190.7 are mandatory procedures that must be adhered to by a taxpayer to contest the taxation determination of a home service provider. Friend admits that he did not submit his grievance to Verizon in writing in accordance with the mandatory provisions of section 144.190.7. Friend's claim that Verizon had "actual notice" of his dispute regarding his assessed tax through Friend's telephone discussions with Verizon's customer service representatives is insufficient as the statute explicitly requires the communication to be in

writing. This Court must give effect to the legislature's intent and we presume it has not included superfluous language in the statute. See *Beard*, 379 S.W.3d at 169.

As this second and independent basis for the grant of summary judgment in favor of Verizon supports the trial court's judgment, it is unnecessary to address Point One on appeal regarding whether Verizon should also have been afforded the protection of the safe harbor provision of the MTSA.

Point One is denied.

### Conclusion

The judgment of the circuit court is affirmed.

All concur